Wilcox v. Parker.

## Edmund Wilcox
### v.
## Harvey B. Parker.

*Insanity—Final Accounting of Conservator—Disallowance of Credits Claimed—Annual Reports, Re-opened.*

Upon the final accounting of the conservator of an insane person, it is *held:* That he is not entitled to be credited with various sums paid on debts incurred by the eldest son of his ward, who was of full age and who took upon himself the care of the family and lived upon and worked his father's farm, said debts having been contracted after the father was adjudged insane; that the court below properly disallowed a *per diem* claimed by the conservator in addition to commissions allowed him; that the evidence sustains the finding of the court below that a son of the ward did sufficient work for the conservator to pay for his board; that the yearly reports of the conservator, although duly approved, are only *prima facie* evidence upon the final accounting and may be re-opened; and that the costs occasioned by contesting the report were properly taxed to him.

[Opinion filed June 7, 1887.]

Appeal from the Circuit Court of Franklin County; the Hon. David J. Baker, Judge, presiding.

In May, 1887, Harvey B. Parker was adjudged insane by the County Court of Franklin County, and was committed to the asylum. At the September term, 1878, of said court, the appellant was appointed his conservator under the statute, and filed his inventory on the 23d day of that month. The appellant made annual reports which were approved by the County Court until the February term, 1885, when he made a final report, being a recapitulation of all the former reports, and stating that Parker had been restored to reason, and asking for a final discharge. The report as presented, showed that he had paid out $6.53 during his administration of the estate more than the entire assets received by him. Parker appeared and contested the correctness of the final report, and the cause being transferred to the Circuit Court by agreement, that

court, the Hon. David J. Baker, presiding, found that the appellant had not fully accounted, and ordered him to restate his account so as to show a balance in his hands of $325.95, and that he pay the same to appellee in ninety days. This conclusion of the learned Judge is based upon the disallowance of certain credits asked for by the appellant, as follows:

Amount paid Espey.................................$ 29.19
W. W. Wiggs note...................................  20.76
E. E. Fitzgerrell note.............................   5.09
Charles Judd note..................................  91.80
M. M. Fitzgerrell note.............................  11.50
F. A. Pruitt note..................................  14.30
For 30 days spent in affairs of the estate........  30.00
For board and keeping Monroe Parker............... 140.00
Part of commissions claimed.......................  10.35

It appears from the evidence contained in the record that when the appellee was sent to the asylum, his son, John R. Parker, then of full age, took upon himself the care of the family, consisting of five younger children, and lived upon and worked the farm belonging to his father. While thus acting as the head of the family, he bought a cook stove at public sale and gave his note, with security, which is the item of $29.19 paid Epsey. The Wiggs note was for hay bought by him and for which he gave his note. The E. Fitzgerrell note was given by John R. for breadstuff purchased. The Charles Judd note was given for a span of mules which he afterward traded to Wilcox before he was appointed conservator. The Pruitt note was given by John R. for meat for the family. The M. M. Fitzgerrell note was given by him for a sulky plow. From the order of the court, disallowing the several items of the report, the conservator appeals to this court.

Messrs. Ross & LAYMAN, for appellant.

While it is true that these several items of debt may have accrued after appellee became insane, and before appellant was appointed his conservator, it is also true, as the evidence shows, that they were for actual necessaries for these infant children, and were legitimate charges against the estate of

Wilcox v. Parker.

appellee. And the County Court being possessed of equitable as well as legal powers in matters of this kind, acted correctly in directing their payment. Johnson v. Maples, 49 Ill. 101; Christy v. McBride, 1 Scam. 75; Short v. Johnson, 25 Ill. 489; Howard v. Slagle, 52 Ill. 336; *In re* Wm. Steele, 65 Ill. 322; Stone v. Wood, 16 Ill. 177; Bond v. Lockwood, 33 Ill. 212.

Messrs. YOUNGBLOOD & PAYNE, for appellee.

PILLSBURY, J. No questions of law are raised by this record and we have only to inquire whether· the evidence sustains the finding of the Judge below.

The debts which the conservator paid and for which he asks to be credited, were all contracted by John R. Parker after his father was adjudged insane, and we perceive no grounds on which the conservator could voluntarily pay them out of assets in his hands and charge them against his ward. The statute authorizes a conservator, by permission and direction of the court appointing him, to perform the personal contracts of his ward made in good faith and legally subsisting at the time of his disability and which may be performed with advantage to the estate; also to settle all accounts of his ward and give acquittances to debtors, and to sue for and recover personal property of his ward and demands due him. These contracts of John R. Parker do not come within these provisions of the statute. They were not subsisting contracts against the ward at the time of his disability. They were, no less, the debts of John R., because, as the eldest son, he took upon himself the care of the family and obtained credit for the benefit of his brothers and sisters as well as himself. The articles purchased by him were not sold by the respective creditors upon the credit of the appellee, nor charged to him, but upon the credit of John alone, and although some of the articles may have been necessaries for the minor children, there can arise no question of the right of the person to furnish such necessaries to the family of an insane person and charge the same to his estate. It can scarcely be contended, with any show of reason, that such transactions between John

R. and his creditors created a legal liability against the estate of the appellee. As to the credit asked for the thirty days spent in the affairs of the estate, the record shows that the conservator had claimed and was allowed in his report his commissions, and the court did no violence to the law in refusing him a *per diem* in addition to such commission. The evidence is sufficient to sustain the finding of the court below that Monroe Parker was able to and did sufficient labor for appellant to pay for his board, and the record shows that he was allowed for all money expended by him for necessaries for Monroe as well as the other children. The deduction made by the court of $10.35 in the commissions asked, was not unreasonable, as the court found that he had still in his hands the sum of $342.95, upon which he also asked to be allowed commissions.

It is insisted, however, that as the appellee made yearly reports and had included therein these items disallowed by the Circuit Court, and such reports were approved by the County Court, such reports are not open for a reconsideration by the court when the conservator files his final report and asks for his discharge. We do not so understand the law. So long as the conservator is still engaged in the execution of his trust, his annual reports made by him and approved by the County Court upon an *ex parte* application are, at most, only *prima facie* evidence of the proper conduct and management of the estate. Until he has finally accounted and been discharged there is no occasion for the ward to resort to a court of equity to ascertain in what manner he has executed his trust; as upon final report being made and notice served upon the ward, upon being restored to reason, he can appear in the County Court and have all such matters investigated as well as in a court of equity. We have no fault to find with the action of the court in taxing all the costs occasioned by the contesting of the report to the appellant. The contention seems to be upon the items disallowed by the court, and the general finding may be said to be in favor of the appellee. There is no error for which the order should be reversed, and it will, therefore, be affirmed.

*Order affirmed.*